I'll hear United States v. Gary James. May it please the Court, my name is David Gordon. I represent appellant Gary James. Hold on one second while we let the Courtroom clear out. The case is under seal. I don't know how that impacts your argument. If there's anything particularly sensitive, let us know and we'll figure out how to deal with it. Fine. Thank you. Mr. James was resentenced on the original charges in this case, which was conspiracy to import cocaine and money laundering conspiracy to run consecutively to an 18-month sentence that had been previously imposed for his failure to appear for sentencing. The issue on appeal is whether the sentencing that was imposed was procedurally unreasonable and also substantively unreasonable. We submit that it was procedurally unreasonable in that the Court did not properly calculate the guidelines by erroneously failing to give Mr. James credit for acceptance of responsibility and also for failing to state in open court at the time of sentencing the reason it was imposing the sentence that it imposed, which was 90 months consecutive to the 18-month sentence previously imposed. Was failure to award acceptance of responsibility points the only procedural error that you're urging on us? No. And failure to state in open court. Right. Those are the only two. Those two. Normally when somebody obstructs justice, the person does not get credit for accepting responsibility. The guideline says that. But the guidelines in Application Note 4 to 3E1.1 also states that in an extraordinary case, a person can also get acceptance of responsibility credit even when one has obstructed justice. I cannot conceive of a case more extraordinary than this one. If this case is not sufficiently extraordinary, I can't imagine that any case is. While he was on supervision, he was arrested three times. He slipped off his bracelet. He absconded for three months. Why was it unreasonable for the district court to deny him acceptance of responsibility in light of those facts? He's a fugitive for two months. Because his fleeing . . . Well, first of all, the arrest that he got while he was under supervision,  was so insignificant that the court . . . that the separation agreement be deemed to be violated. The court never . . . the government never asked that he be remanded. One of them was assault? What was the assault? It wasn't assault. It was harassment. The assault . . . In the third degree, I thought, maybe that's harassment. No, he was . . . the conviction was for harassment. He had a drunk driving, an harassment, and a contempt for violating an order of protection involving his former fiancee. Clearly, he had a drinking problem. He had a drink . . . a driving problem. He had a drinking while driving problem. He had an anger management problem. And he had problems with his former fiancee. There's no question about that. But, the fact that he was arrested while he was awaiting sentence for these things, didn't trouble the government or the court. In fact, the court let him leave the country to go to Guyana to attend the funeral of his sister when there's no extradition treaty with Guyana. He could have stayed there. He could have stayed there. The evidence of his accepting responsibility was his immediate cooperation with the government, totally truthful, telling them everything, even telling the government about an attempt by the brother of a co-conspirator to have him continue participating in the drug conspiracy while he was out on bail. He told the government about that. The problem is, you know, if . . . I used to be a district court judge. I probably would have given him points for acceptance. But, you've got to convince us that the sentencing judge here was just so far out of the ballpark. He was. A judgment that no reasonable district court judge could make. He gave this defendant greater sentence than all the people he cooperated against, who were much more . . . Some of these defendants were involved with 150 kilos of cocaine. Mr. James was involved in recruiting a few mules in connection with three kilos of cocaine. Yet, he got sentences . . . a sentence far greater than the people who were much more culpable than he was. And his cooperation was complete. Everybody he cooperated against had pleaded guilty except one person who absconded. Did you reserve that point for this appeal? What? The disparity. I did. I did breathe the disparity as one of the issues. As one of the issues. But, he . . . Did the district court address the disparity in the sentences? The district judge didn't address any of the arguments that were raised for a downward variance. Not acceptance of responsibility? Not disparity? All he said was . . . The only comment he made during the whole sentencing procedure was he absconded. And, he was criminal category two and he's never spent a day in jail. Which would be a reason to give a lighter sentence. The fact that he'd never been in jail before is a reason to give a sentence . . . under United States v. Michaud . . . a reason to give a sentence below the guidelines. I was also a little confused and I'll ask the government this as well about what the district court understood on remand . . . exactly he was doing. It looked to me like the everyone agreed that the range was 108 months to 135 months. At one point, the district court says, so I start at the top of the guidelines, 135. At another point, he says, no, I'll start at 117 in the middle. And, then he says, I'll start at the low end of the guidelines. This is on A130 and A131. And, I mean, there was confusion about how to deal with the 18 months, the consecutive and what was going to be concurrent. The judge expressed confusion on several occasions. What the court was supposed to do on remand from this court following the original sentence, what the judge was supposed to do is figure out the total appropriate punishment for the underlying offense and for the failure to appear. Figure out what the total punishment was. And, since he had already imposed a sentence of 18 months on the failure to appear, which was not subject to the appeal, then figure out what the total punishment is and then subtract 18 months from that and impose a sentence on the underlying charge for the difference. That's what the judge was supposed to do. Both sides were in agreement that that was what the judge was supposed to do. The judge was confused as to what the guidelines were. He was confused as to whether he was going to give the top of the guidelines, the bottom of the guidelines. He never addressed any of the arguments as to why there should be a variance. He never addressed the argument that there should be a downward departure based upon the military service. Mr. James had served on an aircraft carrier and the probation recognized that was a grounds for downward departure. The probation department in the pre-sentence report recognized that, let's say to the court, probation didn't recommend the guideline sentence. Probation said, we leave it to the court to determine whether there should be a downward variance pursuant to 3553A. The government conceded that although he violated the cooperation agreement, his cooperation was so significant that he rejected that as a basis for a downward variance. Given all these reasons why there should be a downward variance, the court never addressed any of it. The court never explained why he rejected the acceptance of responsibility, never gave any reason for why he was imposing a sentence that was within the guidelines given the sentences imposed on other people, given the cooperation, given the expressions of remorse, given the post-defense rehabilitation that he received. Mr. James has already been in jail for over five years. Now he's been in jail for over six years. He's been in jail for almost 75 months since he came back after he absconded. His absconding had nothing to do with this case, had nothing to do with accepting responsibility. He absconded because he was depressed. He had to go talk to somebody. He slipped out of his bracelet, violated his curfew, and pretrial services said, you're going to be remanded. And he had reason to fear that he'd be killed. One of the other cooperators, one of the people that Mr. James cooperated against, cooperated, and he was executed. A bullet in the back of his head. So when Mr. James was told that he was going to be remanded, immediately, what? Yes, it's definitely in the record. He fled because he feared for his life, not because he wasn't accepting responsibility. If he hadn't accepted responsibility, he would never have come back from Guyana. Did the district court address that at all? No, he didn't address anything. He didn't address anything. Just he absconded. What? Go ahead, finish up. Clearly, he would have gotten a sense of time served if he hadn't absconded. Maybe a minimal sentence and direct surrender to an institution, but probably time served, given the other sentences that were imposed. He'd been out of jail for several years. He'd been awaiting sentence for several years. His cooperation was complete. He had no reason to run away. He ran away because he was afraid to be killed if he didn't. We'll hear from the government. Thank you. May it please the court. If you like, you can press the button to your right and move the podium down. Maybe a little more comfortable for you. May it please the court. My name is Tanisha Payne. I'm an assistant United States attorney in the Eastern District of New York, and I represent the United States in this matter. The district court's sentence was procedurally and substantively reasonable, both as to the sentence itself and the procedures employed in arriving at the sentence. I would first like to draw the court to three main points that I will refer to in my arguments with respect to procedural reasonableness. First, the plain error standard of review applies to this case because the defendant did not object to the district court's alleged failures to explain its reasoning for its sentence and to discuss the Section 3553A factors. Second, the mandate from this court to the district court was specific. On remand, the district court was ordered to first determine the total punishment appropriate in both cases and then offset that amount by the 18 months' imprisonment already imposed in the failure-to-appear case. Third, the proceeding at issue was a resentencing, at which the court heard essentially the same arguments it heard during the initial sentencing hearing. This is relevant because at the initial sentencing, the court stated that it had heard and considered the arguments as well as the relevant 3553A factors. Notably, this court applies a robust plain error standard in this context because it would have been easy for counsel and the defendant to object if they were dissatisfied with the court's explanations and reasonings. Ms. Payne, I'm troubled reading the transcript here about the confusion about what point the district court was starting from and the record's lack of any explanation for where the district court was beginning his analysis on the concurrent sentences before taking the 18 months off. As I mentioned to your adversary, to defense counsel, everyone seems to agree that the range was 108 months to 135 months, that that was correct and the PSR didn't make a recommendation, but at page A130 of the hearing, the district court says, I'm starting at the top of the guidelines, as Mr. Gordon points out, 18 months from 135, that's the top of the range. The following sentence, after that's pointed out, he says, well, actually what I'll do is I'll start with 117 months, the low end of the guidelines, and then subtract 18 months, so it'll be 99, and then I guess you point at that, that's the low end of the guidelines, but that's the midpoint is what you start to say, and then he says, well, if your intention is to sentence the defendant to eight, and then he changes, again, his starting point, and these are significant, 17 months difference, this is a lot of time in jail that he's moving around in his calculus without offering any explanation about why, and so he ends up at the low end of the guidelines where there's been an argument still that he should have varied below given some of these arguments about the reasons that he gave for absconding, so he ends up starting at 108 and subtracts 18 months and ends up at 90, but he's gone from 117 months to 90 in the space of 20 lines or 30 lines in the transcript without any explanation at all to the defendant who needs to spend this time in jail. Why is that procedurally correct? Why doesn't it raise questions even about substantive reasonableness? Well, Your Honor, I agree that the court, in my opinion, did evidence confusion as to the math that it was to apply as far as this court's mandate. I do think that the court understood. It's not just the math. At one point he says  then he starts in the middle, and then he starts at the bottom. I think that the court's confusion was as to the mandate, not specifically as to the applicable guidelines range. In each case, though, he's subtracting 18 months as was directed by the remand. It's the starting point that changes very significantly over the course of this brief colloquy. In being before him, my understanding of his confusion was the fact that he needed to first make a decision as to the appropriate total punishment, and I think that's where he initially had confusion. When I pointed out to the court that if your intention, which is what he said, was to sentence the defendant to the low end of the guidelines, then I said that we would be starting at the 108. So I do think that it was more so. But he starts out by saying I'm starting at the top of the guidelines. Correct, but I think that the slight issue is that the confusion from the court was that he was supposed to first determine the, not first do the subtraction, but to first determine the appropriate punishment for both cases. Well, he ends up going from 117 months to sentencing him to 90 without any explanation. That's obviously in defendant's favor, but I'm troubled that I see no explanation for it. And he doesn't address, I mean, I take it you're arguing that the fact that he absconded was established, and so he doesn't really have to say anything further. But, I mean, he has an affirmative obligation to explain his consideration of the 3553 factors, and I don't see that in the record here. How can I be comforted about his thought process here? Well, Your Honor, at the initial hearing in 2014, the district court did state on the record, although he did cooperate, he heard oral argument, I've considered the factors in 3553A. I just want to remind the court that these factors and these arguments were the same arguments that the defendant argued at the 2014 sentence hearing in its sentence submissions, in the numerous objections to the pre-sentence report, and again at the March 2018 hearing. So the court heard again these arguments, acknowledged that the court had again heard the defendant, and then proceeded to adopt the guidelines range recommended by the Department of Probation, which was the 108 to 135 months. Where did he explain anything about the adjustment for acceptance of responsibility that the defendant proposed? His explanation was after, the only explanation he gave was after counsel again was continuing to argue the acceptance of responsibility where he said, I've heard your point, and then adopted the guidelines range proposed by the probation. So he did acknowledge that he... I'm sorry, where exactly was that? That was... This is appendix 130, when the court says, okay, you had your say. This is line 11, and then says that I find that the guidelines is 108 to 135, and that's what the guidelines is. The first sentence was 186 months? No. 108 to 135. First time. I'm sorry, sir. The first time around in 2014, the sentence was 186 months, I think. That's correct. Total. Correct. So he went down to 100, from 186 to 108. Yes, and that was based on extensive, again, arguments, changes in the revised pre-sentence report where the defendant argued that the court considered a lower quantity of narcotics to attribute to the defendant. The government did not object, and the court accepted that. The new sentence of 108 months covered narcotics conspiracy involving two kilos, money laundering, and absconding. I believe it was three kilos, Your Honor. Three kilos. Yes. But he got more time than co-defendants who were responsible for considerably more drugs. There were, in some instances, but not in all. There were other defendants who were minor participants who were less culpable than this defendant. I also want to bring up that in the court's statement of reasons. There were defendants who had considerably larger quantities of drugs attributed to them who got less sentence. Yes, Your Honor. Give me a couple examples. Okay. Some of my notes suggest that five defendants, including two, received time served. That's correct.       less time served. Yes. And then one who received less time served. Yes. And then one who arranged for drug couriers to be sent to Jamaica also received time served. And one who worked as a driver received 70 months. Correct. That's what my notes. Does that seem correct? Yes. That's fine. Thank you. Thank you. And am I right that in the original sentencing, the judge thought that he was responsible and was held accountable for at least five kilos of cocaine, he should be responsible for only 3.1? Correct. So that also accounts in some part for the change in the sentence and the guidelines range, right? Correct. Thank you. And in addition, the district court's statement of reason established that the pre-sentence report was adopted without change and specifically, the court indicated in his statement of reasons that the factors under 18 U.S.C. 3553A, submissions and argument by counsel and the defendant, defendant's extensive criminal record, their seriousness of the offense, deterrence to criminal conduct to protect the public from future crimes by this defendant and the need for the sentence to be sufficient but not greater than necessary to achieve the aims of the statute. Remind me what his prior record was. His record included harassment, criminal contempt, driving under the influence and And that's an extensive criminal record? I just wanted to Have he ever been incarcerated before? He had been but a very minimal incarceration date. How long? I believe it was I don't believe that I believe that      in prison for I believe he served in prison for for I apologize we don't have the specific time that he served but it could have been between a day but definitely less than a year. I do know that he had a minimal amount of imprisonment prior to this case. Could I ask one final quick question please? I understood that in your original motion to remand when we first saw this case you took the position that the district court had not really fulfilled the requirement of the statement in open court of the reasons for the sentencing. It was specifically that the court had not it wasn't clear that the court had calculated the guidelines range that there was confusion as to the guidelines range not that he had not stated in open court his reasons. I see and so your approach here you think is consistent with that you believe everyone understood what the court was aiming at despite the what I've pointed out in the transcript. Yes, standing before him in the courtroom it appeared that the court did understand the applicable guidelines range the only confusion was as to how this court had mandated that he carry that out as far as subtracting the 18 months. Even though he went basically from 117 months to 90 months. My impression of that was not that he was starting there at his sentence but that he was starting there with the subtraction of the 18 months and then was going to you know from there determine a sentence. There was confusion as to that I agree but in his words and responses to the parties he stated his intention to sentence the defendant to the low end of the guidelines and I reminded him of that. We started out saying the high end. Yes. He started out saying that that's okay I think we have the argument. Thank you. Thank you. Thank you. Thank you. Thank you. You're the one. Judge Parker in response to your question he spent 45 days for contempt of violating an order of protection that was while he was out on bail after which he was allowed to go to Guyana. He was allowed to go to Guyana. The only time he had ever served in jail was for conduct occurring while he was released in this case for violating an order of protection. Do you agree that this is plain error? Yes. Also, the government says that the same arguments were made at the initial sentencing. That's not true. At the initial sentencing there was a lower offense level. There were different guidelines. The defense lawyer at the initial sentencing never made an argument about acceptance of responsibility. I'm sorry, the original sentencing was lower because he shouldn't have been held responsible for drugs that occurred before he entered the conspiracy. I understand the points you're making about the fashion in which the cursory fashion in which the district court touched some of these bases, but I don't understand at this point how all this amounts to plain error. He's required to give his reasons. He didn't give any reasons at all. He did not give any reasons as to why he did not accept what were fairly strong arguments in favor of acceptance of responsibility. He just said, you know, the guidelines are under there. He didn't say why he was rejecting the arguments in favor of acceptance of responsibility.  were made at the original sentence about post-defense rehabilitation. No arguments were made at the original sentence about disparity. There were a lot of additional arguments made, and this was a total resentencing, not an amendment of the first sentencing. This is a totally new proceeding. All the disparity arguments were made in that hearing? At the resentencing hearing, not in the original one. My notes say that some of the co-defendants were sentenced to time served. Mohammed Hussain, he was responsible for 150 kilos. He got a three-level enhancement as a manager or supervisor. He laundered $71,500 intended to pay for the purchase of drugs, not to  the purchase of drugs. He was given a two-level enhancement for  He was given a four-level enhancement as an organizer. His guideline range was 324 to 405 months. He was in criminal category one. He was also involved in selling cocaine since 1995, selling marijuana between 2009 and 2010, laundering money. He was also involved in retagging and reselling cars. This is Mr. Johnson's testimony.   given  two-level  for the purchase of drugs, not to the purchase of drugs. He was given a four-level enhancement since 1995, selling marijuana between 2009 and 2010, not to the purchase of drugs, not  the purchase of marijuana between 2009 and 2010, not to the purchase of drugs, not to the purchase of marijuana between     the purchase   not to the purchase of marijuana between 2009 and 2010, not to the purchase of drugs, not to the purchase of marijuana           to the purchase of drugs, not to the purchase of drugs, not to the purchase of drugs, not   purchase of drugs.